OPINION
{¶ 1} Theodore Hoying appeals from his conviction of menacing by stalking and intimidation of a victim in the Greene County Common Pleas Court after a jury trial.
 {¶ 2} Hoying met the victim, Kelly Criswell, when they both worked at a local restaurant. In June 2002, Hoying asked Criswell for a date, and became quite angry when she declined. When Hoying persisted in contacting Ms. Criswell after she left her employment with the restaurant, Ms. Criswell obtained a civil protection order against Hoying in February, 2003. Subsequently, between August 15, 2003, and September 7, 2003, Hoying sent 105 e-mails to Ms. Criswell in violation of the protection order.
 {¶ 3} In the first e-mail, which is dated August 15, 2003, Hoying acknowledged that he could get in trouble for writing. He then asked Ms. Criswell to remove the civil protection order. Ms. Criswell did not reply to any of Hoying's emails, which became increasingly agitated.
 {¶ 4} The first threatening e-mail was admitted as State's Exhibit 11, and is dated August 16. This e-mail states, "Maybe I still have your picture and I will post it on the Net. Fair is fair. Ted." Subsequently, in State's Exhibit 14, Hoying wrote, "Why don't you tell the authorities I shot three boxes of shells at clay birds yesterday. I'm going to do that the rest of my life at least once a week. I don't give a rat's ass what number eight says on that civil protection order. Ted." That email is also dated August 16, 2003.
 {¶ 5} In Exhibit 18, which is dated August 16, 2003, Hoying threatened to come to Ms. Criswell's place of employment unless she met with him. The same day, in Exhibit 20, Hoying indicated that he would persist in sending e-mails until Ms. Criswell agreed to talk to him.
 {¶ 6} In Exhibit 27, which is an e-mail dated August 17, 2003, Hoying made a significant threat to Ms. Criswell. Specifically, he said:
 {¶ 7} "Kelly, set me free. I'm no longer a man. I'm shackled like a beast. What is a man if he is not free. Let me take away your freedom and you feel the sting. Also, it's not pleasant. Set me free. Ted H."
 {¶ 8} In another e-mail written on the same day (Exhibit 29), Hoying again threatened to come to Ms. Criswell's place of employment. He reiterated that threat in State's Exhibit 31, which was also written on August 17, 2003.
 {¶ 9} As a result of receiving these e-mails, Ms. Criswell filed charges in Xenia Municipal Court, alleging that Hoying had violated the Civil Protection Order. Hoying acknowledged receiving the charge in an e-mail dated August 28, 2003 (admitted as State's Exhibit 65). In that e-mail, Hoying said: "Kelly, why did you do that at Xenia? All I wanted was for things to be normal. I thought you could be nice." The same day, Hoying threatened to file criminal charges against Ms. Criswell's boyfriend, whom Hoying thought was named "Grinstead." See State's Ex. 65 and Tr. Pp. 64-65.
 {¶ 10} Subsequently, on August 30, 2003, Hoying sent State's Exhibit 71 to Ms. Criswell. In that e-mail, Hoying threatened that "If the stuff in Xenia is not handled then some things are going to happen." The next day, Hoying sent State's Exhibit 81, which says:
 {¶ 11} "Ms. Criswell, tell your old man to get rid of the Xenia stuff or the hammer is going to fall heavy on him. It will take three years to get all of this stuff straightened out. If not, remember you are going to be subpoenaed for the thefts since you supplied some of the info, so you might as well say good bye to your job. I've been nice to you. I don't deserve to be paid back like this. I don't want to hurt you, but if you choose their side then that is that. This is such high school shit. I'm not coming to court anyway. I have an important doctor's appointment. My life is just as important as yours. If it is not handled and they come for me, they better bring an army. Ted."
 {¶ 12} As a result of the e-mails, Ms. Criswell changed her address, changed her license plate, changed employment, and eventually moved away. (Ms. Criswell's current living arrangement was not revealed in court, for her protection). Ms. Criswell also testified that she could possibly need psychiatric or psychological assistance in the future because of everything Hoying had done.
 I {¶ 13} In the first assignment of error, Hoying claims that his conviction for menacing by stalking was based on insufficient evidence. As support for this contention, Hoying notes that he did not cause physical harm to Ms. Criswell and she did not seek professional help for mental distress. He also notes a lack of evidence that he was aware that Ms. Criswell believed he would cause her physical harm or mental distress.
 {¶ 14} When we review claims of insufficient evidence,
 {¶ 15} "the relevant inquiry is whether any rational factfinder, after viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. * * * The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Clemons, 82 Ohio St.3d 438, 444, 696 N.E.2d 1009,1998-Ohio-406 (citations omitted).
 {¶ 16} The essential elements of menacing by stalking are found in R.C. 2903.211, which provides, in pertinent part, that:
 {¶ 17} "(A) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
 {¶ 18} "* * *
 {¶ 19} "(B) Whoever violates this section is guilty of menacing by stalking.
 {¶ 20} "* * *
 {¶ 21} "(2) Menacing by stalking is a felony of the fourth degree if any of the following applies:
 {¶ 22} "* * *
 {¶ 23} "(g) At the time of the commission of the offense, the offender was the subject of a protection order issued under section 2903.213 or2903.214 of the Revised Code, regardless of whether the person to be protected under the order is the victim of the offense or another person."
 {¶ 24} After reviewing the evidence, we agree with the State that a reasonable jury could have inferred from the content of the e-mails that Hoying knew Ms. Criswell would consider the messages to be a threat to her physical safety or to that of her father. A reasonable jury could also have found that the messages would cause Ms. Criswell mental distress. The fact that Ms. Criswell previously sought a civil protection order was some evidence that she was afraid of the defendant, and the e-mails were sent after the protection order was issued to the defendant. Ms. Criswell also testified that she was "scared to death" of Hoying and that he had caused her much mental distress.
 {¶ 25} As an additional matter, Hoying's conduct in court did not help his case, as he interrupted Ms. Criswell's testimony several times with inappropriate comments, including calling her a liar. In one outburst, Hoying made what could be interpreted as a threat, stating, "She'd better start telling the truth and quit lying, that's for sure."
 {¶ 26} Hoying did not present any evidence to counteract the victim's testimony, or to prove that she was lying. Accordingly, any rational trier of fact had more than an ample basis for finding Hoying guilty of menacing by stalking.
 {¶ 27} Based on the above discussion, the first assignment of error is without merit and is overruled.
 II {¶ 28} In the second assignment or error, Hoying argues that his conviction for intimidation of a victim in violation of R.C. 2921.04(B) was based on insufficient evidence. Again, the standard of review is that we will not disturb the verdict unless we find that "that reasonable minds could not reach the conclusion reached by the trier of fact."Clemons, 82 Ohio St.3d at 444.
 {¶ 29} Under R.C. 2921.04(B), the elements of intimidation of a victim are that:
 {¶ 30} "No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
 {¶ 31} In this regard, Hoying concedes that he sent Ms. Criswell several email messages stating that he wanted the charges against him in Xenia Municipal Court dismissed. In one message, Hoying said, "If the stuff in Xenia is not handled, then some things are going to happen." In another message, he warned that if the charges were not dismissed, "the hammer was going to fall heavy" on the victim's father. From these messages, a jury could reasonably infer that Hoying was threatening to harm Ms. Criswell or her father if the criminal charges were not dismissed. Furthermore, a threat of physical harm was not required. While some threats in this case do imply physical harm, Hoying also threatened harm to Ms. Criswell's job and reputation. Compare State v. Lutz,
Cuyahoga App. No. 80201, 2003-Ohio-275, at ¶ 53 (finding that the state presented sufficient evidence to support intimidation conviction, where the defendant wrote a letter threatening to publish information that a crime victim was involved in illegal activity. The court found that the threat was made to intimidate the victim and prevent him from pressing charges against the defendant).
 {¶ 32} Because the record contains more than enough evidence to support the jury's finding that Hoying was guilty of intimidating Ms. Criswell, the second assignment of error is without merit and is overruled.
 III {¶ 33} The third assignment of error challenges the trial court's action in sentencing Hoying to the maximum term for the conviction of menacing by stalking, which is a fourth degree felony, at least under the circumstances of this case. See R.C. 2903.211(B)(2)(g). Although community control sanctions are available for fourth degree felonies, Hoying admits that they are not guaranteed. Hoying further concedes that he probably forfeited the ability to obtain community control by his conduct during trial and the sentencing hearing, and by his refusal to participate in the presentence investigation process. Having reviewed the record, we fully agree with that statement.
 {¶ 34} Nonetheless, Hoying contends that he should not have received the maximum sentence for menacing by stalking because the record does not support a finding that he poses the greatest likelihood of recidivism. We disagree.
 {¶ 35} Under R.C. 2929.14(A)(4), the potential term for a fourth degree felony is six to eighteen months. R.C. 2929.14(C) additionally states that:
 {¶ 36} "[e]xcept as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 37} When a trial court imposes maximum sentences, it must state its findings and reasoning at the sentencing hearing. State v. Perry,
Mahoning App. No. 02CA182, 2003-Ohio-7000, at ¶ s11-12, citing State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473. We have also held that when a trial court states its reasons for imposing a maximum sentence, it must "connect those reasons to the finding which the reason supports. * * * `The court cannot merely pronounce causes that objectively may be its reasons. The court must also identify which of those causes are the particular reasons for each of the statutory findings that the court made.'" State v. Waugh, Champaign App. No. 2003-CA-8, 2004-Ohio-396, at ¶ 11.
 {¶ 38} In the present case, the trial court complied with the requirement of making findings at the sentencing hearing. The court also adequately connected its reasons for imposing a maximum sentence to the finding that the reason supported. At the sentencing hearing, the court stated that it found that Hoying had the greatest likelihood to re-offend, and that Hoying had committed the worst form of the offense. Before reciting the court's specific reasons for these findings, we should note that the very night the jury verdict was issued, Hoying attempted to contact the victim. According to the State, Hoying attempted to contact Ms. Criswell five times. Hoying denied making five attempts, but did admit that he tried to contact the victim after the verdict to ask for help with his appeal. In view of the nature of the crime (menacing by stalking) and the jury verdict of "guilty," an attempt to contact the victim of the crime shows either a disconnection from reality or an obstinate refusal to submit to the authority of the law.
 {¶ 39} Hoying also refused to cooperate in any way with the presentence investigation. In addition, Hoying disrupted the sentencing process, showering foul language and abuse on the victim, her family, and even the court, to the point that Hoying eventually had to be removed from the courtroom. Ultimately, in discussing the length of the sentence, the trial court specifically connected the following reasons to its findings, by stating that:
 {¶ 40} "* * * when the victim in this case testified, the Defendant's conduct as to her testimony was absolutely parallel to the conduct of the crime in which he was charged, beginning with his sense of enjoyment of the presence of the victim as she testified, and as her testimony became less beneficial to the Defendant, he proceeded to become more aggravated and agitated, writing notes, ultimately basically yelling at the victim during the course of that testimony, clearly, giving an indication as to his attitude and conduct toward the victim in this matter which brought this case forward in the first place.
 {¶ 41} "For that reason, the Court finds that the shortest prison term would not protect the public from future crimes, and the court has the greatest fear for Kelly Criswell, which the record will reflect, has moved from the immediate area and has taken extraordinary steps to prevent her location from being identified by this Defendant.
 {¶ 42} "The Court notes for the record that testimony in this case and the information subsequently received indicates that the particular victim in this case had no relationship whatsoever with the Defendant, can't even suggest there ever was a scintilla of a relationship, yet the Defendant's attitude toward her is just a classic stalking attitude, and the harm caused to her is so significant that it is necessary to take extreme measures so the Court can protect her, as well as others from future crime.
 {¶ 43} "The Court clearly feels the Defendant's conduct as demonstrated at his arrest, at his arraignment, during the conduct of this matter, the trial, and the sentencing here demonstrates an attitude on his part of failure to comply with authority, the failure to respect the integrity of other individuals, and quite candidly, makes this Defendant a very dangerous individual.
 {¶ 44} "The shortest prison term will demean the seriousness of the Defendant's conduct."
 {¶ 45} "The Court further finds based upon the facts stated herein and the information provided, which will be made a part of the record in this matter, that the Defendant's conduct has, to a great degree, established the worst form of the offense. I do not discount Counsel's statement that a first time offender is one in which there is an indication from the legislature that the least restrictive setting should apply; however, this Court can say unequivocally, in all the time that I've been on the Bench, I've never seen a Defendant that I'm more sure of is a serious threat to society and to the public.
 {¶ 46} "The Court also finds the Defendant clearly poses the greatest likelihood to commit future crimes in this matter, and as such, the Court makes reference particularly to the competency report prepared earlier this year where the Defendant indicated in his evaluation, quote, I know I'm not crazy. I knew what I was doing when I contacted her knowing I was violating the order, end quote."
 {¶ 47} We find that the above discussion by the trial court fully complies with requirements for imposing maximum sentences. We also agree with the trial court that a maximum sentence was warranted. The record in this case is quite troubling, since it portrays an individual who either has no remorse for his actions, or refuses to admit he needs mental health treatment. Even though Hoying was found competent to stand trial, that does not mean that he is free of mental health problems that should be addressed, hopefully while he is in the prison system.
 {¶ 48} In view of the preceding discussion, the third assignment of error is without merit and is overruled.
 IV {¶ 49} In the fourth assignment of error, Hoying contends that the trial court erred in sentencing him to the maximum term for intimidating a victim. Because this crime was a felony of the third degree, the potential terms ranged from one to five years. See R.C. 2921.04(B) and (D), and R.C. 2929.14(A)(3). Hoying claims the sentence was erroneous because the trial court did not specifically refer to the intimidation charge. Hoying also alleges that the trial court "lumped together" some of the required findings for felonies of the fourth or fifth degree and for consecutive sentences. We disagree. The comments we have quoted were made in connection with the sentencing for both convictions, not just the conviction for menacing by stalking. Furthermore, the crimes in the present case were related and similar considerations apply to the sentencing for each crime. Originally, Ms. Criswell obtained a civil protection order against Hoying in February, 2003. Hoying then violated the protection order by e-mailing Ms Criswell on August 15, 2003. Emails continued throughout August, and on August 28, 2003, Ms. Criswell filed charges in Xenia Municipal Court based on violation of the protection order. Thereafter, Hoying sent further e-mails, threatening Hoying and her family and requesting that the Xenia charges be dismissed. As we mentioned, even after the jury verdict, Hoying was still attempting to contact Ms. Criswell about the pending charges.
 {¶ 50} Furthermore, even at the sentencing hearing, Hoying was still attempting to threaten Ms. Criswell's family. For example, Hoying made the following statements to Criswell's father: "You son-of-a-bitch. I ought to tell the things you did, you son of an asshole. You fucking moron. Wait till I get an appeal, man, and tell the truth."
 {¶ 51} As we implied in connection with the third assignment of error, the circumstances of this case clearly and convincing support the trial court's imposition of maximum sentences. That is true for the menacing by stalking conviction, and it is equally true for the intimidation of a victim conviction. As a result, the fourth assignment of error is without merit and is overruled.
 V {¶ 52} In the final assignment of error, Hoying objects to imposition of consecutive sentences. Consecutive sentences may be imposed for convictions of multiple offenses,
 {¶ 53} "if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 54} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 55} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 56} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(E)(4).
 {¶ 57} In imposing consecutive sentences, the trial court relied on R.C. 2929.14(E)(4)(b) and(c). Specifically, the court commented that:
 {¶ 58} "a consecutive term would be appropriate in this case because it's necessary to protect the public from future crime by this Defendant, and I believe that the evidence presented in the trial in this matter, the Defendant's behavior during the trial, his failure to comply with the simplest matters of completing the presentence investigation clearly indicates that the Defendant's desire to not follow authority is quite clear. In fact, the Court would go so far as to make that finding beyond a reasonable doubt.
 {¶ 59} "The Court further finds that consecutive sentences would be appropriate to punish the offender for the conduct he committed, and consecutive sentences in this case are not disproportionate to the seriousness of the Defendant's conduct and to the danger the Defendant clearly and unequivocally poses to the victim in this case and to the public generally.
 {¶ 60} "The Court further finds that the harm caused in this case is so great that no single sentence would adequately reflect the seriousness of the Defendant's conduct, and the information received by the Prosecuting Attorney, which was made a part of the record in this case, indicating that the Defendant, even after his arrest, attempted to make continued contact with the victim, likewise dictates the Court's finding in this particular regard."
 {¶ 61} Based on the above reasons, the trial court imposed consecutive sentences, which resulted in a total of six and half years incarceration. In challenging the decision, Hoying contends that the trial court simply restated some of the findings that had already prompted imposition of maximum sentences. According to Hoying, State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, requires more. However, we disagree, as Comer does not reject the use of similar findings to support both consecutive and maximum sentences. In fact, that issue was not even discussed. Instead, the primarily issue in Comer was a split among lower courts over whether findings and reasons for consecutive sentences could be made in written form in a journal entry or whether they should be placed orally on the record at the sentencing hearing. Id. at ¶ 18.
 {¶ 62} In this regard, the Ohio Supreme Court held that "[p]ursuant to R.C. 2929.14(E)(4) and 2929.19(B)(2)(c), when imposing consecutive sentences, a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing." 2003-Ohio-4165, at paragraph one of the syllabus. Among the reasons the Ohio Supreme Court gave for this choice was that all interested parties would be present at the hearing, and counsel would have an opportunity in the hearing to correct the court's obvious errors. Id. at ¶ 22.
 {¶ 63} Accordingly, Comer does not require more than the trial court did in the present case. Consistent with Comer, the court orally commented on its findings and the reasons for the findings during the sentencing hearing.
 {¶ 64} Furthermore, some reasons will overlap or will be duplicated, anyway, due to the wording of the pertinent statutes. For example, one factor in imposing maximum sentences is whether an offender has committed the worst form of an offense. R.C. 2929.14(C). Similarly, a factor in deciding if consecutive sentences are warranted is whether the harm caused by two or more of the multiple offenses is "so great or unusual that no single prison term for any of the offenses * * * adequately reflects the seriousness of the offender's conduct." R.C. 2929.14(E)(4)(b). As merely one way in which these factors can overlap, we note that the harm caused by a particular offense will certainly bear on the determination of whether an offender has committed the worst form of the offense.
 {¶ 65} Likewise, reasons that support a finding that an offender poses "the greatest likelihood of committing future crimes" may also support a finding that "the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C. 2929.14(C) and R.C. 2929.14(E)(4)(c), respectively. Accordingly, we see nothing wrong with a court using the same or similar reasons for more than one finding, so long as the court is not simply repeating a stock set of phrases that shows little or no thought has been given to the sentencing decision.
 {¶ 66} Our review of the record indicates that the trial court supported its findings with reasons that justified consecutive sentences. As a result, the fifth assignment of error is without merit and is overruled.
 {¶ 67} In view of the preceding discussion, all five assignments of error are overruled and the judgment of the trial court is affirmed.
Fain, J., and Young, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)