[Cite as *State v. Rasawehr*, 2020-Ohio-429.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MERCER COUNTY


STATE OF OHIO,

     PLAINTIFF-APPELLEE,                    CASE NO.  10-19-15

     v.

JEFFERY E. RASAWEHR,                O P I N I O N

     DEFENDANT-APPELLANT.


Appeal from Celina Municipal Court
Trial Court No. 16CRB00943

Judgment Affirmed

Date of Decision:   February 10, 2020


APPEARANCES:

     *Michael H. Stahl and William V. Stephenson* **for Appellant**

     *Matthew K. Fox and Amy B. Ikerd* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Jeffery E. Rasawehr ("Rasawehr"), appeals the July 12, 2019 judgment entry of sentence of the Celina Municipal Court. For the reasons that follow, we affirm.

{¶2} On October 25, 2016, a criminal complaint was filed in the Celina Municipal Court, charging Rasawehr with thirteen counts: Counts One, Two, Three, Four, and Five of menacing by stalking in violation of R.C. 2903.211(A)(1), first-degree misdemeanors, and Counts Six, Seven, Eight, Nine, Ten, Eleven, Twelve, and Thirteen of telecommunications harassment in violation of R.C. 2917.21(A)(6), first-degree misdemeanors. (Doc. No. 2). On November 23, 2016, Rasawehr filed a written plea of not guilty to the charges. (Doc. No. 6).

{¶3} On July 21, 2017, the State filed a motion to join this case with another criminal case of Rasawehr's (case number 16CRB00942), which the trial court granted on August 1, 2017. (Doc. Nos. 27, 29). The cases proceeded to a jury trial on May 21-24, 2019. During the trial, the trial court dismissed Counts One, Two, Three, Four, Eight, Nine, Eleven, Twelve, and Thirteen.[1] (Doc. No. 107); (May 21-24, 2019 Tr., Vol. IV, at 961).

---

[1] During the trial (in case number 16CRB00942), the trial court dismissed Count Three and the State filed a motion to dismiss Count Thirteen, which the trial court dismissed. (Doc. No. 107).

{¶4} On May 24, 2019, the jury found Rasawehr guilty of Counts Five and Six, but not guilty of Counts Seven and Ten.[2] (Doc. Nos. 97, 104). On July 12, 2019, the trial court sentenced Rasawehr to five years of community-control sanctions. (Doc. No. 105).

{¶5} Rasawehr filed a notice of appeal on August 9, 2019 and raises five assignments of error for our review.[3] (Doc. No. 19). For ease of our discussion, we will address Rasawher's first assignment of error, followed by his second and third assignments of error together, then his fourth and fifth assignments of error together.

### Assignment of Error No. I

**Mr. Rasawehr was denied his rights to a fair trial, before an impartial jury, his right to remain silent, and his right due [sic] process under the U.S. and Ohio Constitutions when, over the objection of the defense, the trial judge instructed the jury that Freedom of Speech was an Affirmative Defense which Mr. Rasawehr had to prove by a preponderance of the evidence**

{¶6} In his first assignment of error, Rasawehr argues that the trial court committed structural error by instructing the jury that he "bore a burden to prove beyond a reasonable doubt that that [sic] he had Freedom of Speech * * * ." (Appellant's Brief at 12). Rasawehr also argues under his first assignment of error that the State committed structural error during its closing argument by stating that

---

[2] The jury found Rasawehr not guilty of all charges in case number 16CRB00942. (Doc. No. 104).
[3] Rasawehr did not file a notice of appeal in case number 16CRB00942.

the affirmative-defense instruction applied to Rasawehr's menacing-by-stalking and telecommunications-harassment charges.

*Standard of Review*

{¶7} "A structural error is a constitutional defect that defies analysis by harmless error standards, because it affects the framework within which the trial proceeds, rather than simply being an error in the trial process itself." *State v. Fields*, 12th Dist. Butler No. CA2005-03-067, 2005-Ohio-6270, ¶ 27, citing *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 17.

> Structural error affects the substantial rights of a criminal defendant, even absent a specific showing that the outcome of the trial would have been different, and requires automatic reversal. Because a defendant is relieved of his burden to show prejudice, the finding of structural error is rare and limited to exceptional cases.

*State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 53 (Moyer, J., concurring in judgment only), citing *Perry* at ¶ 18, citing *Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544 (1997). The "'limited class of cases'" recognizing structural error are cases "in which the errors permeate the 'entire conduct of the trial from beginning to end,' so that the trial court cannot "'reliably serve its function as a vehicle for determination of guilt or innocence."'" *Fields* at ¶ 27, quoting *Arizona v. Fulminante*, 449 U.S. 279, 309-310, 111 S.Ct. 1246 (1991), quoting *Rose v. Clark*, 478 U.S. 570, 577-578, 106 S.Ct. 3101 (1986). Those "'limited number of cases'" in which structural errors have been recognized include "'a total

deprivation of the right to counsel; lack of an impartial trial judge; unlawful exclusion of grand jurors of the defendant's race; the right to self-representation at trial; the right to a public trial; erroneous reasonable doubt instruction to the jury.'" *Id.*, quoting *Johnson* at 468-469.

*Analysis*

{¶8} Before addressing whether the trial court's jury instruction amounts structural error, we must examine whether the jury-instruction error that Rasawehr alleges to be structural error is properly before this court. In this case, Rasawehr was charged with menacing by stalking and telecommunications harassment. In case number 16CRB00942, Rasawehr was charged with obstructing official business. Prior to the start of trial, the trial court (at the State's request) joined the charges in this case with Rasawehr's charges in case number 16CRB00942. Importantly, Rasawehr neither objected to the joinder nor sought severance of the cases under Crim.R. 14. *See State v. Gordon*, 152 Ohio St.3d 528, 2018-Ohio-259, ¶ 21.

{¶9} Contrary to Rasawehr's contention on appeal, the trial court's jury instructions were not unclear as to which case the instructions applied. In particular, in its jury instructions, the trial court instructed the jury as to the instructions relevant to *each* case. (*See* May 21-24, 2019 Tr., Vol. IV, at 1021, 1031); (Doc. No. 100). After the trial court concluded its instructions relative to case number

16CRB00942, the trial court informed the jury that the remainder of its instructions related to both cases. (*Id.* at 1031). Importantly, with respect to the affirmative-defense instruction, the trial court specifically stated that it concluded "the instruction in Case Number 943" and that it was "mov[ing] on to instruction in Case Number 942" before giving the affirmative-defense instruction. (*Id.* at 1021). In other words, the affirmative-defense instruction to which Rasawehr objects is included with the trial court's instructions in case number 16CRB00942. (*See id.* at 1027-1031). Because the affirmative-defense instruction to which Rasawehr objects relates to case number 16CRB00943 and Rasawehr did not appeal from that case, that issue is not properly before this court and we cannot consider any alleged errors relating to it. *See State v. Novak*, 8th Dist. Cuyahoga No. 92586, 2009-Ohio-6220, ¶ 9.

{¶10} Accordingly, we turn to Rasawehr's argument that the State's suggestion in its closing argument that the affirmative-defense instruction applied to his menacing-by-stalking and telecommunications-harassment charges amounts to structural error. However, Rasawehr cites no authority that the principle of structural error applies to this type of error, and we see none. *See State v. Cleavenger*, 11th Dist. Portage No. 2019-P-0036, 2020-Ohio-73, ¶ 12; *State v. Cassel*, 2d Dist. Montgomery No. 26708, 2016-Ohio-3479, ¶ 58. *See also State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, ¶ 24.

{¶11} Because an error with the State's closing argument does not fall into any recognized definition of structural error, and because Rasawehr's trial counsel did not object to the State's closing argument, this case calls for a plain-error analysis. *See Wamsley* ¶ 25; *Cleavenger* at ¶ 13. *See also State v. Smith*, 3d Dist. Hardin No. 6-14-14, 2015-Ohio-2977, ¶ 63, citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 139 and *State v. Saleh*, 10th Dist. Franklin No. 07AP-431, 2009-Ohio-1542, ¶ 68. "Crim.R. 52(B) governs plain-error review in criminal cases." *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 55, citing *State v. Risner*, 73 Ohio App.3d 19, 24 (3d Dist.1991). "To demonstrate plain error, the defendant must demonstrate that the trial court deviated from a legal rule, the error was an obvious defect in the proceeding, and the error affected a substantial right." *State v. Howard*, 3d Dist. Marion No. 9-10-50, 2011-Ohio-3524, ¶ 83, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "The defendant must also demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors." *Id.*, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996), citing *State v. Moreland*, 50 Ohio St.3d 58 (1990). "We recognize plain error '"with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."'" *Id.*, quoting *State v. Landrum*, 53 Ohio St.3d 107, 110 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶12} "Prosecutors are afforded considerable latitude in closing argument." *State v. Encarnacion*, 10th Dist. Franklin No. 16AP-817, 2017-Ohio-5530, ¶ 9, citing *State v. Ballew*, 76 Ohio St.3d 244, 255 (1996). "A prosecutor may comment on '"what the evidence has shown and what reasonable inferences may be drawn therefrom."'" *Id.*, quoting *State v. Lott*, 51 Ohio St.3d 160, 165 (1990), quoting *State v. Stephens*, 24 Ohio St.2d 76, 82 (1970), and citing *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 159 ("A prosecutor may state an opinion if based on evidence presented at trial."). *See State v. McGuire*, 3d Dist. Allen No. 1-13-47, 2015-Ohio-1887, ¶ 81 ("In closing arguments, prosecutors are entitled to some latitude regarding what the evidence has shown and the inferences that can be drawn."), citing *Ballew* at 255.

{¶13} "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *Encarnacion* at ¶ 9, citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "A prosecutor's isolated comments are not to be taken out of context and given their most damaging meaning." *Id.*, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 94, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868 (1974). "Instead, an appellate court must review a closing argument in its entirety to determine whether prejudicial error occurred." *Id.*, citing *Noling* at ¶ 94, citing *State v. Frazier*, 73 Ohio St.3d 323, 342 (1995).

{¶14} Here, Rasawehr directs us to the beginning of the State's closing argument during which it recites the First Amendment and acknowledges Rasawehr's theory of the cases as being about the First Amendment. However, contrary to Rasawehr's argument on appeal, the State did not reference Rasawehr's argument that his conduct was privileged under the First Amendment as an affirmative defense at that juncture of its closing argument. Rather, the State was responding to the evidence presented at trial by Rasawehr that his conduct was privileged under the First Amendment, which it is permitted to do. Moreover, the only reference to the issue appears in the State's rebuttal-closing argument in relation to case number 16CRB00943, which is not before us. (*See* May 21-24, 2019 Tr., Vol. IV, at 1002-1003). Accordingly, we cannot say that the State's remarks were improper.

{¶15} Nevertheless, even if the State's remarks were improper, Rasawehr cannot demonstrate that he was prejudiced by the State's closing argument—that is, Rasawehr cannot demonstrate that the outcome of his trial would have been different. *See State v. Thompson*, 3d Dist. Henry No. 7-16-10, 2017-Ohio-792, ¶ 26. Indeed, in its jury instructions, the trial court not only instructed the jury that the affirmative-defense instruction applied only as to case number 16CRB00942 (as we previously discussed), but the trial court instructed the jury prior to opening statements (and in its jury instructions) that "[e]vidence does not include * * *

closing arguments of counsel." (May 21-24, 2019 Tr., Vol. IV at 1011); (Doc. No. 100). (*See also* May 21-24, 2019 Tr., Vol. I, at 159-160). "A jury is presumed to follow and comply with instructions given by the trial court." *State v. Palmer*, 12th Dist. Butler No. CA2013-12-243, 2014-Ohio-5491, ¶ 27, quoting *State v. Carpenter*, 12th Dist. Butler No. CA2005-11-494, 2007-Ohio-5790, ¶ 20, citing *Pang v. Minch*, 53 Ohio St.3d 186 (1990). *See also State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, ¶ 194. Furthermore, there is no evidence that the jury failed to follow the trial court's jury instructions because the jury found Rasawehr not guilty of two of the charges that it was presented in this case and all of the charges that it was presented in case number 16CRB00942. Therefore, Rasawehr cannot demonstrate that he was prejudiced by the State's closing argument.

{¶16} Accordingly, Rasawehr's first assignment of error is overruled.

## Assignment of Error No. II

**As to Count Five the prosecution failed to present sufficient evidence to prove every element of Menacing by Stalking as required by the United States and Ohio Constitutions**

## Assignment of Error No. III

**As to Count Six, the prosecution failed to present sufficient evidence to prove every element of Telecommunications Harassment as required by the United States and Ohio Constitutions**

{¶17} In his second and third assignments of error, Rasawehr contends that his menacing-by-stalking and telecommunications-harassment convictions are

based on insufficient evidence. In particular, under his second assignment of error, Rasawehr argues that his menacing-by-stalking conviction is based on insufficient evidence because the State failed to prove that the victim suffered mental distress. In his third assignment of error, Rasawehr specifically argues that his telecommunications-harassment conviction is based on insufficient evidence because the State presented insufficient evidence that he "uttered a threatening, intimidating, menacing, coercive or obscene" statement. (Appellant's Brief at 16).

*Standard of Review*

{¶18} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33,

citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.).

*See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19

("Sufficiency of the evidence is a test of adequacy rather than credibility or weight

of the evidence."), citing *Thompkins* at 386.

*Analysis*

{¶19} We begin by addressing Rasawehr's sufficiency-of-the-evidence

argument as it relates to his menacing-by-stalking conviction, followed by his

sufficiency-of-the-evidence argument as it relates to his telecommunications-

harassment conviction. *See State v. Velez*, 3d Dist. Putnam No. 12-13-10,

2014-Ohio-1788, ¶ 68, citing *State v. Wimmer*, 3d Dist. Marion No. 9-98-46, 1999

WL 355190, *1 (Mar. 26, 1999).

{¶20} Rasawehr was convicted of menacing by stalking in violation of R.C.

2903.211(A)(1), which provides

> No person by engaging in a pattern of conduct shall knowingly cause
> another person to believe that the offender will * * * cause mental
> distress to the other person * * * . In addition to any other basis for
> the other person's belief that the offender will cause * * * mental
> distress to the other person * * * , the other person's belief or mental
> distress may be based on words or conduct of the offender that are
> directed at or identify a corporation, association, or other organization
> that employs the other person or to which the other person belongs.

{¶21} On appeal, Rasawehr argues only that there is insufficient evidence

that the victim suffered mental distress. Because it is the only element that

Rasawehr challenges on appeal, we will review the sufficiency of the evidence

supporting only the mental-distress element of the offense. The statute defines mental distress as "[a]ny mental illness or condition that involves some temporary substantial incapacity" or "[a]ny mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2).

**{¶22}** Rasawehr does not dispute that the State presented evidence that he "exacerbated an already existing mental illness for which the [victim] had been under in-patient psychiatric care on multiple occasions" and "[d]ue to [his] actions, [the victim] claim[ed] to have needed to see her counselor more often, and that her medication changed." (Appellant's Brief at 15). Instead, Rasawehr argues that he cannot be convicted of menacing by stalking because the State did not present evidence "of a 'mental illness or condition' suffered by the [victim], triggered solely by Mr. Rasawehr's conduct * * * ." (*Id.* at 15). Rasawehr's argument is misplaced. "[T]he statute does not require that the victim actually suffered mental distress."[4] *State v. Beckwith*, 8th Dist. Cuyahoga No. 104683, 2017-Ohio-4298, ¶ 14, citing *State v. Horsley*, 10th Dist. Franklin No. 05AP-350, 2006-Ohio-1208, ¶ 47. "'The

---

[4] Ohio courts of appeal disagree as to "whether R.C. 2903.211(A)(1) requires an alleged stalking victim to show actual mental distress." *Fondessy v. Simon*, 142 Ohio St.3d 147, 2014-Ohio-4638, ¶ 2, 18 (Kennedy, J., dissenting). *See also R.G. v. R.M.,* 7th Dist. No. 17 MA 0004, 2017-Ohio-8918, ¶ 13-14 (acknowledging the conflict). This district has concluded that R.C. 2903.211(A)(1) requires only that the victim believe that the stalker will cause him or her mental distress. *See, e.g., Holloway v. Parker*, 3d Dist. Marion No. 9-12-50, 2013-Ohio-1940, ¶ 23. Nevertheless, under either application of the statute, the result is the same in this case.

state need only show that a defendant knowingly caused the victim to believe that he would cause her mental distress or physical harm.'" *Id.*, quoting *Horsley* at ¶ 47. Accordingly, the victim's testimony (as conceded by Rasawehr above) was sufficient to meet the statutory definition of mental distress. *See Horsely* at ¶ 48; *State v. Szloh*, 189 Ohio App.3d 13, 2010-Ohio-3777, ¶ 27 (2d Dist.).

{¶23} Furthermore, Rasawehr contends that he cannot be convicted of menacing by stalking because "impos[ing] criminal liability for commentary about a wrongful killing because it upsets the killer is an unreasonable construction of the statute and contrary to good public policy." (Appellant's Brief at 15). Under the State's theory of the case, based on the bill of particulars, the menacing-by-stalking charge alleged in Count Five relates to Rasawehr's conduct on September 26, 2016. (Doc. No. 11). (*See also* May 21-24, 2019 Tr., Vol. IV, at 1014); (Doc. No. 100). At trial, the State presented evidence that (on September 26, 2016) Rasawehr sent the victim text messages stating the following:

> What did you do twenty year [sic] ago today
>
> Are u [sic] with kids or are u [sic] in a mental institution
>
> Josh implied u r [sic] in a mental institution
>
> If I do not get an answer I am going to have police stop and check tonight
>
> Calling police now

(May 21-24, 2019 Tr., Vol. II, at 448-452); (State's Exs. 34, 35). The State also presented a September 26, 2016 voicemail message left by Rasawehr on the victim's phone, which was played for the jury. (May 21-24, 2019 Tr., Vol. II, at 462-463); (State's Ex. 50). In the voicemail message, Rasawehr can be heard saying that the victim "should remember th[at] day well" because "21 years ago [she] took [her] pills and murdered" two men, and Rasawehr can be heard asking the victim if she "remember[ed] murdering those two men." (State's Ex. 50). Further, Rasawehr can be heard stating that the victim "never paid the price for what [she] did" and that she should "sit at church and pray for killing those two men." (*Id.*).

{¶24} A rational trier of fact could infer from the series of text messages and voicemail message that Rasawehr knew that the messages would cause the victim to believe that he would cause her mental distress. *See State v. Hoying*, 2d Dist. Greene No. 2004-CA-71, 2005-Ohio-1366, ¶ 24. That is, a rational trier of fact could find that threatening to call (or actually calling) law enforcement to a person's home is an act which will cause that person to believe that the caller will cause them mental distress. *See Beckwith* at ¶ 14 (noting that "the trier of fact can refer to its own experiences to determine whether the defendant's conduct caused the emotional distress"), citing *State v. Bilder*, 99 Ohio App.3d 653, 665 (9th Dist.1994). Likewise, drawing on its own life experiences, a rational trier of fact

could find that the voicemail message in which Rasawehr accuses the victim of murder was intended to cause the victim to believe that he would cause her mental distress. *See id.*

{¶25} Nevertheless, "[t]he parties' history is also relevant to establishing the elements of menacing by stalking." *State v. Erker*, 8th Dist. Cuyahoga No. 107790, 2019-Ohio-3185, ¶ 75, citing *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶ 114, citing *State v. Hart*, 12th Dist. Warren No. CA2008-06-079, 2009-Ohio-997, ¶ 12 ("In prosecutions for menacing by stalking, the victim's belief that the defendant will cause physical harm is an element of the offense which is often intertwined with their past interactions."). *See also State v. Smith*, 3d Dist. Seneca No. 13-02-11, 2002-Ohio-5095, ¶ 18 ("While each of Smith's actions taken alone may not rise to the level of criminal behavior under 2903.211, that determination changes when considering the cumulative effect of these encounters along with Smith's intent to upset Donor and her actual mental distress."). Here, the victim (who was married to Rasawehr) testified regarding Rasawehr's pattern of conduct. Specifically, she testified that she "thought after the marriage was over, that the verbal abuse would stop but it never did. * * * [J]ust constant berating, constant * * * abuse, the verbal abuse continued through texts, voicemail, through [her] answering machine, through other people." (May 21-24, 2019 Tr., Vol. II, at 442). Through the State's Exhibits, the victim shared some of those texts, voicemails, and

-16-

social-media posts. (*See id.* at 443-467); (State's Exs. 32, 33, 34, 35, 36, 37, 38, 39).

{¶26} Therefore, based on this evidence, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Rasawehr caused the victim to believe that he would cause her mental distress. *See State v. Shaver*, 12th Dist. Warren No. CA96-09-094, 1997 WL 423138, *4 (July 28, 1997); *Cleveland v. Scott*, 8th Dist. Cuyahoga No. 108305, 2019-Ohio-5244, ¶ 27. Accordingly, Rasawehr's menacing-by-stalking conviction is based on sufficient evidence.

{¶27} Having concluded that Rasawehr's menacing-by-stalking conviction is based on sufficient evidence, we turn to the sufficiency of the evidence supporting Rasawehr's telecommunications-harassment conviction. As an initial matter, we note that Rasawehr offers no support for his argument that his telecommunications-harassment conviction is based on insufficient evidence. "[A] defendant has the burden of affirmatively demonstrating the error of the trial court on appeal." *State v. Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7, citing *State v. Cook*, 9th Dist. Summit No. 20675, 2002-Ohio-2646, ¶ 27. "Moreover, '[i]f an argument exists that can support this assignment of error, it is not this court's duty to root it out.'" *Id.*, quoting *Cook* at ¶ 27. "App.R. 12(A)(2) provides that an appellate court 'may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or

fails to argue the assignment separately in the brief, as required under App.R. 16(A).'" *State v. Jackson*, 10th Dist. Franklin No. 14AP-670, 2015-Ohio-3322, ¶ 11, quoting App.R. 12(A)(2). "Additionally, App.R. 16(A)(7) requires that an appellant's brief include '[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, *with citations to the authorities*, *statutes*, and parts of the record on which appellant relies.'" (Emphasis added.) *Id.*, quoting App.R. 16(A)(7). Although Rasawehr failed to provide citations to the authorities and statutes that support his argument, in the interest of justice, we will address the merits of Rasawehr's sufficiency-of-the-evidence argument. *See State v. Thomas*, 3d Dist. Mercer No. 10-10-17, 2011-Ohio-4337, ¶ 25.

{¶28} Telecommunications harassment is codified under R.C. 2917.21, which provides, in relevant part:

> (A) No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller does any of the following:
>
> * * *
>
> (6) Knowingly makes any comment, request, suggestion, or proposal to the recipient of the telecommunication that is threatening, intimidating, menacing, coercive, or obscene with the intent to abuse, threaten, or harass the recipient.

R.C. 2917.21(A)(6).

**{¶29}** On appeal, Rasawehr argues only that there is insufficient evidence that he "uttered a threating, intimidating, menacing, coercive or obscene" statement. (Appellant's Brief at 16). Because it is the only element that he challenges on appeal, we will review the sufficiency of the evidence supporting only whether Rasawehr made a threatening, intimidating, menacing, coercive, or obscene statement. Although the terms "threatening," "intimidating," "menacing," "coercive," and "obscene" have not been defined within the meaning of R.C. 2917.22, "[t]he fact that the statute does not place legal definitions on each of these terms demonstrates that the General Assembly intended to prohibit conduct that is easily definable by the common everyday meaning of these words." *State v. Stanley*, 10th Dist. Franklin No. 06AP-65, 2006-Ohio-4632, ¶ 13, citing *State v. Dennis*, 3d Dist. Allen No. 1-97-42, 1997 WL 691448, *2 (Oct. 30, 1997). *See Hamilton v. Combs*, 12th Dist. Butler No. CA2018-02-026, 2019-Ohio-190, ¶ 21. Indeed, several of the terms have been defined (by applying the everyday meaning of the word) in other circumstances under Ohio's criminal code. *See, e.g.*, *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, ¶ 39-40 (defining the terms "threat" and "intimidation" under R.C. 2921.04); *State v. Woods*, 48 Ohio St.2d 127, 136 (1976) (defining the term "coercion" under R.C. 2929.04), *vacated on other grounds*, *sub nom. Woods v. Ohio*, 438 U.S. 910, 98 S.Ct. 3133 (1978).

{¶30} The term "threat" "has been defined as 'an expression of an intention to inflict evil, injury, or damage on another usu[ally] as retribution or punishment for something done or left undone.'" *In re C.W.*, 1st Dist. Hamilton No. C-180677, 2019-Ohio-5262, ¶ 16, quoting *Cress* at ¶ 36, citing *Webster's Third New International Dictionary* 2382 (1986). "'It connotes almost any expression of intent to do an act of harm against another person irrespective of whether that act is criminal.'" *Id.*, quoting *Cress* at ¶ 36. "The term 'threat' represents a range of statements or conduct intended to impart a feeling of apprehension in the victim, whether of bodily harm, property destruction, or lawful harm, such as exposing the victim's own misconduct.'" *State v. Price*, 5th Dist. Delaware No. 2019 CA 00019, 2020-Ohio-132, ¶ 29, quoting *Cress* at ¶ 39.

{¶31} "Intimidation" by definition involves the creation of fear in a victim, and the very nature of a threat is the creation of fear of negative consequences for the purpose of influencing behavior." *Cress* at ¶ 40. And, "menacing" generally means "a show of intention to inflict harm: a threatening gesture, statement, or act." *Webster's Third New International Dictionary* 1409 (2002).

{¶32} Further, "[c]oercion is generally defined more broadly to include undue influence and other lesser forms of compulsion." *Woods* at 136. "'Coercion' may include a compulsion brought about by moral force or in some other manner with or without physical force.'" *State v. Moore*, 8th Dist. Cuyahoga No. 105285,

2018-Ohio-1825, ¶ 36, quoting *Woods* at 136. "These judicial definitions of coercion correspond to the common use of the word." *Woods* at 136. Indeed, "Webster's Third New International Dictionary defines coercion as 'the act of coercing: use of physical or moral force to compel to act or assent,' and to coerce as 'to restrain, control or dominate, nullifying individual will or desire (as by force, power, violence, or intimidation).'" *Id.*, quoting *Webster's Third New International Dictionary*.

{¶33} Finally, the everyday meaning of "obscene' is something that is "disgusting to the senses * * * because of some filthy, grotesque, or unnatural quality"; "grossly repugnant to the generally accepted notions of what is appropriate"; "offensive or revolting as countering or violating some ideal or principle: in the lewd or lustful [or] inciting or designed to incite the lewd or lustful"; or "marked by violation of accepted language inhibitions and by the use of words regard as taboo in polite usage;" "repulsive by reason of malignance, hypocrisy, cynicism, irresponsibility, crass disregard of moral or ethical principles." *Webster's Third New International Dictionary* 1557 (2002). *See also State v. White*, 2d Dist. Montgomery No. 27749, 2018-Ohio-3076, ¶ 57 (applying R.C. 2907.01(F) to define the term "obscene materials").

{¶34} Under the State's theory of the case, based on the bill of particulars, the telecommunications-harassment charge alleged in Count Six relates to

Rasawehr's conduct in September 2016. (Doc. No. 11). (*See also* May 21-24, 2019 Tr., Vol. IV, at 1016-1017); (Doc. No. 100). In addition to the text messages and voicemail sent to the victim by Rasawehr on September 26, 2016 (that we addressed above), the State also played a voicemail message which was left by Rasawehr on the victim's phone in September 2016. (May 21-24, 2019 Tr., Vol. II, at 464-465); (State's Ex. 5). In that voicemail message, Rasawehr can be heard saying that the victim can "record all that [she] wants" because "the hillbillies in Mercer County will cover [her] ass" but that he is "going to take [the Mercer County Sheriff] out, [he] is still taking that mother fucker out." (State's Ex. 50). Rasawehr can further be heard informing the victim that she should change her voice recording because she sounds "measly," "pathetic," and "whiny," and Rasawehr declares "no wonder [she] pops so many pills." (*Id.*).

{¶35} Based on that evidence, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Rasawehr made a threating, intimidating, menacing, coercive, or obscene statement. Indeed, the September voicemail includes Rasawehr's expression of an intention to inflict injury to the Mercer County Sheriff—that is, a threating and menacing statement—as a means of creating fear in the victim, which results in an intimidating and coercive statement. Further, Rasawehr uses profane language during the call as well as demeaning terms for Mercer County officials and the victim—statements, which fit within the

everyday meaning of the word "obscene." Accordingly, Rasawehr's telecommunications-harassment conviction is based on sufficient evidence.

{¶36} For these reasons, Rasawehr's second and third assignments of error are overruled.

### Assignment of Error No. IV

**As applied to the facts of this case, a conviction under the Menacing by Stalking statute violates the United States First Amendment, and Sect. 10, Art I of the Ohio Constitution and Due Process under both Constitutions**

### Assignment of Error No. V

**As applied to the facts of this case, a conviction under the Telecommunications Harassment statute violates the United States First Amendment, and Sect. 10, Art I of the Ohio Constitution and Due Process under both Constitutions.**

{¶37} In his fourth and fifth assignments of error, Rasawehr argues that the menacing-by-stalking and telecommunications-harassment statutes are unconstitutional as applied to him. In particular, under his fourth assignment of error, Rasawehr contends that the menacing-by-stalking statue is unconstitutional because "[n]o one could ever know what speech would cause a mentally ill person distress * * * ." (Appellant's Brief at 18). Under his fifth assignment of error, Rasawehr specifically argues that the telecommunications-harassment statute is unconstitutional because "if the statute is construed in such a way that his comment was, 'threatening, intimidating, menacing, coercive, or obscene[,] the limited

language in the statute would become meaningless and the so [sic] would fail to provide the required notice under the void for vagueness doctrine." (*Id.* at 19).

**{¶38}** As an initial matter, we note that Rasawehr failed to challenge the constitutionality of R.C. 2903.211 or 2917.21 prior to or at trial. "The Supreme Court of Ohio has held that, "'[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.'"" *State v. Heft*, 3d Dist. Logan No. 8-09-08, 2009-Ohio-5908, ¶ 29, quoting *State v. Rice*, 3d Dist. Allen Nos. 1-02-15, 1-02-29, and 1-02-30, 2002-Ohio-3951, ¶ 7, quoting *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus. "However, the waiver doctrine set forth by *Awan* is discretionary; thus, 'even where waiver is clear, a reviewing court may consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it.'" *Id.*, quoting *Rice* at ¶ 7, citing *In re M.D.*, 38 Ohio St.3d 149 (1988), syllabus. Nevertheless, ""'discretion will not ordinarily be exercised to review such claims, where the right sought to be vindicated was in existence prior to or at the time of trial.'"" *Id.*, quoting *Rice* at ¶ 7, quoting *State v. 1981 Dodge Ram Van*, 36 Ohio St.3d 168, 170-171 (1988), quoting *State v. Woodards*, 6 Ohio St.2d 14, 21 (1966).

{¶39} The constitutional issues Rasawehr raises on appeal were available to him before and at the time of his trial. Therefore, Rasawehr waived the issues on appeal, and we decline to address them.

{¶40} Rasawehr's fourth and fifth assignments of error are overruled.

{¶41} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**