[Cite as *State v. Pirani*, 2024-Ohio-3060.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 15-23-09

  v.

JAMAL PIRANI,

O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Van Wert County Common Pleas Court
Trial Court No. CR-23-02-029

**Judgment Affirmed**

Date of Decision:  August 12, 2024

APPEARANCES:

    *Chima R. Ekeh* **for Appellant**

    *Morgan A. Jackson* **and** *Eva J. Yarger* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Jamal Pirani ("Pirani") appeals the judgment of the Van Wert County Court of Common Pleas, arguing that his right to a speedy trial under R.C. 2945.71 was violated; that his conviction was not supported by sufficient evidence; and that he was denied his right to the effective assistance of counsel. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On January 25, 2023, Pirani called the Van Wert City Police Department and asked to speak to the chief of police. Once Chief Douglas J. Weigle ("Chief Weigle") joined the line, Pirani stated that he was "upset" that he was being "pull[ed] * * * over every single god damn night for being parked on private property." (Tr. 125, 126). After Pirani stated that he had been parking at the Holiday Inn, Chief Weigle indicated that the hotel management wanted their lot reserved for guests. Pirani insisted that he had permission to park at the hotel, but Chief Weigle indicated that a police officer was not likely to "just show[] up without some type of complaint or previous complaints * * *." (Tr. 130). Pirani said that he wanted the police to stop routinely approaching his vehicle in private parking lots. During this call, Chief Weigle did not indicate that this existing police practice was going to change.

**{¶3}** Pirani then called the Van Wert County Sheriff's Office and spoke with the dispatcher, Stephanie Harter ("Harter"). Pirani began by saying the following: "Well, I just wanted to let you know that I have as of 3 minutes ago put the Chief of Police, uh, on notice to please have his officers stop harassing me." (Tr. 141). He asserted that the police had approached his vehicle seventeen times in the last month and then said:

> I've asked them very nicely to please leave me alone and he [the Van Wert Chief of Police] told me he goes if my officers feel that they need to stop and check with you, they will. So, the next time I'm doing it, there will be, uh, I'm standing my ground, and I will shoot. So, I'm putting you on notice; next I'm calling the State Patrol * * *. And you can put the Sheriff on notice too that I will shoot any officer from Van Wert City Police Department that harasses me for not breaking the law and doing what I am legally allowed to do that you guys are supposed to uphold. * * * So please, if you hear a call, this is what's going on. If you hear I've been arrested, this is what's going on and I will expect you to investigate please. Can you do that? Can you get that to the Sheriff, please?

(Tr. 142-143). He indicated that, once he was done speaking with the sheriff's office, he intended to call the Ohio State Patrol and then the U.S. Marshalls because he was moving up the "chain of command." (Tr. 142). After this call ended, Harter reported Pirani's statements to her supervisor.

**{¶4}** Detective Sergeant Kyle Fittro ("Sergeant Fittro") then listened to the recording of this conversation. He testified that he took such threats "very seriously"; sent an alert notifying area law enforcement agencies about these statements; and issued an emergency bulletin for circulation. (Tr. 173). After

-3-

consulting with the prosecutor's office, the police obtained an arrest warrant and dedicated resources to apprehending Pirani. The police later located Pirani in a Walmart parking lot and arrested him.

{¶5} Deputy Nathan Owens ("Deputy Owens") of the Van Wert County Sheriff's Office was responsible for transporting Pirani to jail. During the car ride, the following exchange occurred regarding Pirani's earlier phone calls:

> Mr. Pirani: I am not threatening to shoot people, but I am trying to say and get across is that I am going to stand my ground within my rights to the highest extent of the law. And I said if I, and I even told this to Police Chief, if I am not breaking a law or there is some reason that someone's called and complained or they are responding to a complaint, just leave me alone. Why are you guys rolling up on me all the time when I'm parked. You know what I mean?
>
> * * *
>
> Deputy Owens: But you still made the threats though. That's the problem.
>
> Mr. Pirani: No, it's not a threat, intent. There was no intent to threat, and I clarified that.
>
> Deputy Owns: But you . . . I listened to it.
>
> Mr. Pirani: * * * I mean according to the law. I'm just saying that if you say, if you tell somebody, if you don't, if you keep violating my rights, I'm going to stand my ground in accordance with the law. That's not threatening. That's, that's standing up for your rights.
>
> * * *
>
> Mr. Pirani: * * * so, now you guys' falsely arrested a, a person with a disability * * *[.]

-4-

* * *

Deputy Owens: I wouldn't say we falsely arrested you. There was enough evidence according to Ohio Law for [the] prosecutor to sign off on the charges.

Mr. Pirani: Nope, because all threats must be malicious.

Deputy Owens: Well, threatening to shoot police officers would do it.

Mr. Pirani: * * * I was threatening to uphold my rights under Ohio law.

(Tr. 160, 163-164). At the jail, Sergeant Fittro interviewed Pirani after reading him a copy of his *Miranda* rights. During this interview, Pirani admitted that he was the person who had placed the calls on January 25, 2023.

{¶6} On February 2, 2023, Pirani was indicted on one count of making a terroristic threat in violation of R.C. 2909.23(A)(1)(c), a third-degree felony. On April 6, 2023, Pirani filed motions that requested a competency evaluation and that sought to enter a plea of not guilty by reason of insanity ("NGRI"). The trial court then ordered a competency evaluation for Pirani. After receiving a report from the evaluation, the trial court issued a judgment entry on July 26, 2023, finding Pirani competent to stand trial.

{¶7} After a pretrial conference on August 14, 2023, the trial court issued a judgment entry that ordered Pirani to undergo an NGRI evaluation. The trial court specified that the report from this evaluation was to be submitted within thirty days. On August 14, 2023, the trial court also issued an order that scheduled Pirani's trial

to begin on September 25, 2023.  The NGRI evaluation was submitted to the trial court on August 28, 2023.

{¶8} At his trial on September 25, 2023, the State introduced recordings of the calls that Pirani had placed to the police department and the sheriff's office in addition to a recording of Pirani's conversation with Deputy Owens.  The jury returned a verdict of guilty on the charge against Pirani.  The trial court issued its judgment entry of sentencing on November 8, 2023.

{¶9} Pirani filed his notice of appeal on November 15, 2023.  On appeal, he raises the following three assignments of error:

**First Assignment of Error**

**Appellant was denied his right to a speedy trial.**

**Second Assignment of Error**

**Appellant's conviction for making terroristic threat based on the underlying felonious assault was not supported by legally sufficient evidence.**

**Third Assignment of Error**

**Appellant was denied the effective assistance of counsel.**

*First Assignment of Error*

{¶10} Pirani argues that his statutory speedy trial rights under R.C. 2945.71, et seq., were violated.

Legal Standard

**{¶11}** In Ohio, R.C. 2945.71, et seq., codifies a criminal defendant's right to a speedy trial. *State v. Risner*, 2004-Ohio-186, ¶ 12 (3d Dist.). Under this provision, a person with a pending felony charge "[s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2). In calculating the accrual of speedy trial time, the triple-count provision in R.C. 2945.71(E) specifies that "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."

**{¶12}** "Because the General Assembly recognized that some degree of flexibility is necessary, it allowed for extensions of the time limits for bringing an accused to trial in certain circumstances." *State v. Ramey*, 2012-Ohio-2904, ¶ 24. For this reason, "R.C. 2945.72 contains an exhaustive list of events and circumstances that extend the time within which a defendant must be brought to trial." *Id.*

**{¶13}** R.C. 2945.72(H) states that the speedy trial time is extended by "the period of any reasonable continuance granted other than upon the accused's own motion." "[P]ursuant to R.C. 2945.72(H), 'a court may grant a continuance upon its own initiative as long as it is reasonable.'" *State v. Hart*, 2022-Ohio-4550, ¶ 84 (2d Dist.), quoting *State v. King*, 70 Ohio St.3d 158, 162 (1994).

> Ideally, '[w]hen sua sponte granting a continuance under R.C. 2945.72(H), the trial court must enter the order of continuance and the

reasons therefor by journal entry prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing a defendant to trial.'

* * *

[A]n appellate court may affirm a conviction challenged on speedy-trial grounds even if the trial court did not expressly enumerate any reasons justifying the delay when the reasonableness of the continuance is otherwise affirmatively demonstrated by the record.

*Ramey*, *supra*, at ¶ 32, 33, quoting *State v. Mincy*, 2 Ohio St.3d 6 (1982), at syllabus. "The reasonableness of the delay is determined based upon the specific facts and circumstances of each case." *State v. Kesler*, 2014-Ohio-3376, ¶ 5 (3d Dist.). "This court has previously held that delaying proceedings until the next available date was a reasonable delay." *Id*., citing *State v. Glass*, 2004-Ohio-4402, ¶ 14 (3d Dist.).

{¶14} "Upon review of a speedy-trial issue, a court is required to count the days of delay chargeable to either side and determine whether the case was tried within applicable time limits." *State v. Sanchez*, 2006-Ohio-4478, ¶ 8. "If any ambiguity exists," the reviewing court is to "construe the record in favor of the accused." *State v. Shafer*, 2015-Ohio-2469, ¶ 12 (3d Dist.).

Legal Analysis

{¶15} Pirani did not raise this alleged speedy-trial violation before the trial court. In general, a defendant cannot assert a speedy-trial challenge for the first time on appeal. *State v. Kendrick*, 2023-Ohio-1763, ¶ 12 (1st Dist.); *State v. Sergent*,

2019-Ohio-4717, ¶ 14 (3d Dist.);[1] *State v. Hicks-Stevens*, 2023-Ohio-4307, ¶ 12 (8th Dist.). Nonetheless, we will still examine the merits of Pirani's arguments for plain error. *Sergent* at ¶ 15. *See also State v. Conkright*, 2007-Ohio-5315, ¶ 18 (6th Dist.).

{¶16} Crim.R. 52(A) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

> For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. * * * Under the plain error standard, the appellant must demonstrate that there is a reasonable probability that, but for the trial court's error, the outcome of the proceeding would have been otherwise.

(Citations omitted.) *State v. Bradshaw*, 2023-Ohio-1244, ¶ 67 (3d Dist.). Plain error is recognized "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶17} In this case, Pirani was charged with a felony and remained in jail from his arrest through trial. On August 14, 2023, the trial court issued a scheduling order

---

[1] *Sergent* concluded that a speedy trial challenge cannot be raised for the first time on appeal in part because an appellant's failure to file a motion to discharge in compliance with R.C. 2945.73(B) constituted a waiver of the issue. *Sergent, supra,* at ¶ 14. Since *Sergent* was decided, R.C. 2945.73 has been revised. Now, R.C. 2945.73(B) only addresses motions to discharge in misdemeanor cases while R.C. 2945.73(C) governs cases with felony charges. Having reviewed the amended provision, we find that the revision to R.C. 2945.73 does not disturb *Sergent's* conclusion that the failure to properly assert the right to a speedy-trial before the trial court waives such a challenge on appeal.

that set Pirani's trial for September 25, 2023. The calculations in the State's brief indicate that, at the time the scheduling order was issued, the allotted speedy-trial time was set to expire on September 20, 2023. The calculations in Pirani's brief indicate that, at this same juncture, the speedy-trial time was set to expire on August 25, 2023. Both parties conclude that this order was issued before the expiration of the speedy-trial time and scheduled a trial date that fell after the speedy-trial time was set to expire. Our independent calculations confirm this conclusion. Thus, the issue in this analysis is whether the trial court's scheduling order constituted a reasonable sua sponte continuance under R.C. 2945.73(H).

{¶18} A "trial court's decision to schedule [a] * * * trial beyond the applicable speedy trial period [can] constitute[] a 'continuance granted other than upon the accused's own motion' under * * * R. C. 2945.72(H)." *South Euclid v. Schutt*, 2020-Ohio-3661, ¶ 29 (8th Dist.). While a trial court will "[i]deally" set forth the reasons for such a sua sponte continuance,

> an appellate court may affirm a conviction challenged on speedy-trial grounds even if the trial court did not expressly enumerate any reasons justifying the delay when the reasonableness of the continuance is otherwise affirmatively demonstrated by the record.

*Ramey*, *supra*, at ¶ 32, 33. We turn to examining the circumstances surrounding the decision to set the trial date for September 25, 2023. *Kesler*, *supra*, at ¶ 5.

{¶19} In this case, the trial court issued the scheduling order on August 14, 2023. On that same date, the trial court also issued a judgment entry that ordered

an NGRI evaluation for Pirani in response to a motion that he had previously filed. This judgment entry specified that a written report from the NGRI evaluation was to be submitted to the trial court no later than September 13, 2023. Thus, the trial was scheduled to occur twelve days after the deadline for submitting the NGRI report.

{¶20} While the reasons for selecting this trial date were not expressly stated in the scheduling order, the reasons for this sua sponte continuance are evident from the context provided by the record. When the scheduling order is read in conjunction with the NGRI order, the trial court is clearly reconciling the need to schedule a date for the trial with the need to give the parties ample time to prepare for trial based upon the results of the NGRI evaluation.[2] Under the timeframe established by the trial court's August 14 orders, the parties would have had twelve days to prepare for trial if the NGRI report had been submitted on September 13. Given this context, we also conclude that the length of this sua sponte continuance was reasonable. Since the scheduling order falls under R.C. 2945.72(H), Pirani cannot establish plain error with his arguments. The first assignment of error is overruled.

---

[2] In its brief, the State represents that the trial court scheduled the trial on September 25, 2023 "with [the] assent of defense counsel." (Appellee's Brief, 7). Since this assent is not evidenced in the record, we do not rely on this representation in reaching a conclusion in this case.

*Second Assignment of Error*

**{¶21}** Pirani argues that his conviction for making terroristic threats is not supported by sufficient evidence because the State failed to establish that he committed or attempted to commit the acts described in his threats.

Legal Standard

**{¶22}** A sufficiency-of-the-evidence analysis examines whether the State has carried its burden of production at trial. *State v. Richey*, 2021-Ohio-1461, ¶ 16 (3d Dist.). "On review, an appellate court is not to consider whether the evidence at trial should be believed but whether the evidence, if believed, could provide a legal basis for the finder of fact to conclude that the defendant is guilty of the crime charged." *State v. Daniels*, 2024-Ohio-1536, ¶ 13 (3d Dist.). For this reason, the applicable standard "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *State v. Plott*, 2017-Ohio-38, ¶ 62 (3d Dist.).

**{¶23}** To establish a conviction for making a terroristic threat in violation of R.C. 2909.23(A)(1)(c), the State must prove that the defendant "threaten[ed] to commit or threaten[ed] to cause to be committed a specified offense"; "ma[d]e the threat with purpose to * * * [a]ffect the conduct of any government by the threat or by the specified offense"; and "[a]s a result of the threat, the person cause[d] a

reasonable expectation or fear of the imminent commission of the specified offense." R.C. 2909.23(A)(1)(c).

{¶24} A "specified offense" is defined in R.C. 2909.21(M) as including "[a] felony offense of violence * * *." In turn, R.C. 2901.01(A)(9) lists felonious assault as an offense of violence.[3] The provision defining felonious assault states that "[n]o person shall knowingly * * * [c]ause serious physical harm to another" or "[c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *." R.C. 2903.11(A). Further, R.C. 2909.23(B) states that "[i]t is not a defense to a charge of [making terroristic threats] * * * that the defendant did not have the intent or capability to commit the threatened specified offense * * *."

Legal Analysis

{¶25} Pirani raises a narrow sufficiency challenge on appeal. He only argues that his conviction for making a terroristic threat is not supported by sufficient evidence because the State did not prove that "the underlying offense of attempted felonious assault occurred." (Appellant's Brief, 10). But in his brief, he has not raised an argument based on the text of R.C. 2909.23 or directed us to any legal authority that would suggest that the State had to prove he committed or attempted to commit the specified offense in this case.

---

[3] The State identified felonious assault as the specified offense in the indictment.

{¶26} The text of R.C. 2909.23(A)(1)(c) only requires the State to prove that the defendant "threaten[ed] * * * to commit * * * a specified offense * * * with purpose to * * * affect the conduct of any government[.]" Further, R.C. 2909.23(B) indicates that a person can violate R.C. 2909.23(A) without having "the intent or capability to commit the threatened specified offense." R.C. 2909.23(B). These provisions do not require the State to prove the defendant committed or attempted to commit the specified offense to establish a conviction for making terroristic threats. This is consistent with the rationale that has found the criminalization of true threats to be constitutionally permissible under the First Amendment.

{¶27} "'True threats' are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Counterman v. Colorado*, 600 U.S. 66, 74 (2023), quoting *Virginia v. Black*, 538 U.S. 343, 360 (2003). Laws proscribing true threats are not limited "to protecting people 'from the possibility that the threatened violence will occur" but also "'protect[] individuals from the fear of violence' and from the disruption that fear engenders[.]'" *Black* at 360, quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992). For this reason, "[t]he speaker need not actually intend to carry out the threat." *Id.*

{¶28} The statutory language in R.C. 2909.23(A)(1)(c) indicates that this provision exists to prohibit individuals from purposely using the concerns aroused by true threats of certain specified offenses to manipulate the conduct of the government. Thus, the primary focus of R.C. 2909.23 is whether the speaker

intended the threat of a specified offense to have a certain effect on the listener instead of whether the speaker ultimately intended to commit the threatened specified offense.

{¶29} In conclusion, the State was only required to prove that Pirani "uttered the threat for the purpose of * * * affecting the conduct of any government." *State v. Baughman*, 2012-Ohio-5327, ¶ 26 (6th Dist.) (holding the State did not have to prove the defendant committed the specified offense to establish a violation of R.C. 2909.23). *See State v. Steiner*, 2022-Ohio-2088, ¶ 17 (9th Dist.) (Whether the defendant "intended to commit the specified offense is inapposite" under R.C. 2909.23.). Since R.C. 2909.23 did not require the State to prove that Pirani attempted to commit or committed the specified offense of felonious assault, his sufficiency argument is meritless. The second assignment of error is overruled.

### Third Assignment of Error

{¶30} Pirani argues that defense counsel was ineffective for failing to challenge the constitutionality of R.C. 2909.23.

### Legal Standard

{¶31} "Ohio law presumes that a licensed attorney's representation was competent." *State v. Morgan*, 2024-Ohio-625, ¶ 13 (3d Dist.). "In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this

deficient performance prejudiced the defendant." *State v. McWay*, 2018-Ohio-3618, ¶ 24 (3d Dist.), quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

**{¶32}** To establish deficient performance, the appellant must demonstrate that defense "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. Howton*, 2017-Ohio-4349, ¶ 35 (3d Dist.), quoting *Strickland* at 687. In general, matters that fall within the ambit of trial strategy or debatable tactics do not constitute ineffective assistance of counsel. *State v. Wears*, 2023-Ohio-4363, ¶ 32 (3d Dist.). Further, defense counsel is not required to "raise meritless issues or even all arguably meritorious issues." *State v. Mayse*, 2017-Ohio-1483, ¶ 24 (3d Dist.).

**{¶33}** To establish prejudice, "the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Bibbs*, 2016-Ohio-8396, ¶ 13 (3d Dist.). "If the appellant does not establish one of these two prongs, the appellate court does not need to consider the facts of the case under the other prong of the test." *State v. Gear*, 2023-Ohio-1246, ¶ 50 (3d Dist.).

Legal Analysis

**{¶34}** While Pirani's brief acknowledges that true threats are not protected by the First Amendment, he asserts that defense counsel was ineffective for failing to raise two facial challenges to the constitutionality of R.C. 2909.23. *See Black*, *supra*, at 359. "A statute may be challenged on constitutional grounds in two ways:

(1) that the statute is unconstitutional on its face, or (2) that it is unconstitutional as applied to the facts of the case." *State v. Brown*, 2010-Ohio-4546, ¶ 10 (3d Dist.).

> Where it is claimed that a statute is unconstitutional as applied, the challenger must present clear and convincing evidence of a presently existing set of facts that make the statute unconstitutional and void when applied to those facts.

*Brown*, at ¶ 10. In contrast, a facial "challenge is the most difficult to successfully mount because the challenger must establish that no set of circumstances exists under which the act would be valid." *State v. Mole*, 2016-Ohio-5124, ¶ 96. Thus,

> '[t]he fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid.' *Harrold v. Collier*, [2005-Ohio-5334,] * * * ¶ 37. 'In order for a statute to be facially unconstitutional, it must be unconstitutional in all applications.' *Oliver v. Cleveland Indians Baseball Co. Ltd. Partnership*, [2009-Ohio-5030,] * * * ¶ 13.

*Mole* at ¶ 96. In this analysis, enactments of the General Assembly are presumed to be constitutional. *State v. Jackson*, 2023-Ohio-2193, ¶ 85 (3d Dist.). Against this presumption, the challenger must establish the statute is unconstitutional beyond a reasonable doubt. *State v. Hacker*, 2020-Ohio-5048, ¶ 14 (3d Dist.).

{¶35} In the first facial challenge he identifies, Pirani asserts that defense counsel should have argued that R.C. 2909.23 was unconstitutional because the word "threat" was not defined in the statute. However, if a statutory provision does not provide a specific definition for a term, this merely "demonstrates that the General Assembly intended to prohibit conduct that is easily definable by the

-17-

common everyday meaning of the[] word[].” *State v. Rasawehr*, 2020-Ohio-429, ¶ 29 (3d Dist.), quoting *State v. Stanley*, 2006-Ohio-4632, ¶ 13 (10th Dist.).

{¶36} Accordingly, Ohio courts have repeatedly relied on various dictionary definitions of the word “threat” to interpret different statutes containing this term. *State v. Cress*, 2006-Ohio-6501, ¶ 36; *In re C.W.*, 2019-Ohio-5262, ¶ 16 (1st Dist.); *Rasawehr* at ¶ 30; *State v. Krupa*, 2010-Ohio-6268, ¶ 32 (7th Dist.); *State v. Shuck*, 2020-Ohio-6989, ¶ 15 (9th Dist.); *State v. Pariscoff*, 2010-Ohio-2070, ¶ 16 (10th Dist.); *State v. Marshall*, 2017-Ohio-9269, ¶ 21 (12th Dist.).

{¶37} In light of these decisions, Pirani provides no explanation as to how the absence of a statutory definition for the word “threat” in R.C. 2909.23 means “that there exists no set of circumstances under which the statute would be valid.” *Harrold, supra*, at ¶ 37. Thus, his argument fails to establish that this challenged code section is facially invalid beyond a reasonable doubt. For this reason, Pirani cannot demonstrate he was prejudiced by the fact that defense counsel did not raise a meritless argument at trial.

{¶38} In the second facial challenge he identifies, Pirani argues that R.C. 2909.23(B) is unconstitutional because it indicates that the defendant is not required to “have the intent or capability to commit the threatened specified offense.”[4] In

---

[4] R.C. 2909.23(B) essentially describes an intention that the defendant is not required to have to commit this offense. In contrast, R.C. 2909.23 (A)(1) defines the intent that the defendant must have to make terroristic threats: a defendant must, depending on the subsection, utter the threat with the purpose to intimidate, coerce, influence, or affect a specified group or entity. *See also Counterman v. Colorado*, 600 U.S. 66, 75 (2023). Pirani does not raise a challenge to the intent element in R.C. 2909.23(A)(1). Since he exclusively addresses

response to this narrow challenge, we note that the U.S. Supreme Court has held that a state may prohibit true threats without running afoul of the First Amendment. *Black, supra,* at 359. In defining the extent of constitutional free-speech protections in this context, the U.S. Supreme Court held that

> '[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. * * * *The speaker need not actually intend to carry out the threat.* Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'

(Emphasis added.) (Citations omitted.) *Id.* at 359-360, quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992). Because the harms caused by a true threat are not entirely dependent on whether the speaker subjectively intends to perform the threatened acts, the State is not required to prove that the speaker intended to commit the specified offense. *Black*, *supra*, at 360. *See also U.S. v. Keystone*, 2021 WL 3578952, * 1 (4th Cir. Aug. 13, 2021).

{¶39} In light of the U.S. Supreme Court's holding in *Black*, Pirani has failed to establish how R.C. 2909.23(B) is facially unconstitutional beyond a reasonable doubt with this argument. *Black*, *supra*, at 360. *See also Hall v. Kosei St. Marys Corporation*, 2023-Ohio-2021 (3d Dist.) (holding that Article I, Section 11 of the

---

R.C. 2909.23(B), our analysis will be limited to determining whether he has demonstrated that provision is facially unconstitutional.

Ohio Constitution provides the same level of free-speech protections as the First Amendment to the U.S. Constitution), citing *Eastwood Mall, Inc. v. Slanco*, 1994-Ohio-433, *222. Thus, Pirani cannot demonstrate that he was prejudiced by the fact that defense counsel did not raise this meritless challenge at trial.

{¶40} Finally, Pirani argues that we should follow the plurality opinion that decided *State v. Laber*, 2015-Ohio-2758 (4th Dist.) and concluded that trial counsel was ineffective, under the facts of that case, for failing to raise constitutional challenges to R.C. 2909.23.[5] However, plurality opinions are not controlling law and are, therefore, of "questionable precedential value." *State v. Gwynne,* 2023-Ohio-3851, ¶ 68, fn. 6, quoting *Kraly v. Vannewkirk*, 69 Ohio St.3d 627, 633 (1994). We also note that *Laber* contains important factual distinctions from the case presently before us. For these reasons, merely directing our attention to this other decision is not enough to establish an ineffective assistance of counsel claim. Accordingly, we decline to reach the same conclusion as *Laber*.

{¶41} In summary, Pirani has not raised an argument that establishes defense counsel was ineffective for failing to raise the constitutional challenges identified in his brief. *See State v. Klingel*, 2017-Ohio-1183, ¶ 24-27 (9th Dist.) (finding that defense counsel was not ineffective for failing to raise constitutional challenges to

---

[5] The second assignment of error in *Laber* addressed the issue of whether trial counsel was ineffective for failing to raise constitutional challenges to R.C. 2909.23. One judge dissented. A second judge concurred in judgment and opinion overruling the first and third assignments of error but only concurred in the judgment sustaining the second assignment of error. *Laber*, *supra*, at ¶ 29.

R.C. 2909.23 on First Amendment grounds). The third assignment of error is overruled.

## *Conclusion*

**{¶42}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Van Wert County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**WALDICK and MILLER, J.J., concur.**

**/hls**