[Cite as *State v. Marshall*, 2017-Ohio-9269.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NO. CA2016-11-031 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 12/28/2017 |
| - vs - | | |
| | : | |
| JEREMY J. MARSHALL, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM MADISON COUNTY MUNICIPAL COURT
Case No. CRB1600311


Stephen J. Pronai, Madison County Prosecuting Attorney, Kirsten Gross, 59 North Main Street, London, Ohio 43140, for plaintiff-appellee

Shannon M. Treynor, 63 North Main Street, P.O. Box 735, London, Ohio 43140, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Jeremy Marshall, appeals from his domestic violence conviction in the Madison County Municipal Court. For the reasons discussed below, this court affirms Marshall's conviction.

{¶ 2} On April 29, 2016, the Madison County Sheriff's Office filed a complaint charging Marshall with one count of domestic violence, a violation of R.C. 2919.25(C), a

fourth-degree misdemeanor. The complaint arose after Marshall called 9-1-1 and alleged that his mother kicked him during a fight. A responding deputy determined that Marshall was the primary aggressor and arrested him.

{¶ 3} The matter proceeded to a bench trial in October 2016. The state introduced testimony from Kathleen Marshall (Marshall's mother), Beth Ann Marshall (Marshall's sister), and the responding deputy. The court found Marshall guilty. Marshall appeals, raising four assignments of error. For ease of analysis, we address certain assignments of error collectively and out of order.

{¶ 4} Assignment of Error No. 3:

{¶ 5} THE PROSECUTION FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION, BY FAILING TO MEET ALL THE ELEMENTS OF THE OFFNESE BY PROOF BEYOND A REASONABLE DOUBT.

{¶ 6} Assignment of Error No. 4:

{¶ 7} THE DEFENDANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 8} In his third and fourth assignments of error Marshall challenges the sufficiency and the weight of the evidence supporting his conviction. Marshall argues that the state failed to submit sufficient evidence that he committed a threatening act towards Kathleen or that Kathleen believed that Marshall would cause her physical harm. Marshall otherwise argues that his conviction was not supported by the weight of the evidence because the court found that Kathleen was not afraid of Marshall.

{¶ 9} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 16. The "relevant

inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 10} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18. A "determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 11} The court convicted Marshall of domestic violence in violation of R.C. 2919.25(C), which provides that "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." "Physical harm," as defined by R.C. 2901.01(A)(3), "means any injury, illness, or other physiological impairment, regardless of its gravity or duration." For a violation of R.C. 2919.25(C), the state must prove that the victim believed the offender would cause him or her imminent physical harm at the time the incident took place. *State v. Hart*, 12th Dist. Warren No. CA2008-06-079, 2009-Ohio-997, ¶ 21, citing *State v. Campbell*, 12th Dist. Butler No. CA2007-12-313, 2008-Ohio-5542, ¶ 15, in turn citing

*Hamilton v. Cameron*, 121 Ohio App.3d 445, 449 (12th Dist.1997). Thus, the victim's state of the mind is an essential element of the crime. *Hamilton* at 449.

{¶ 12} Kathleen testified that she was at her daughter Beth Ann's home on April 29, 2016. Marshall was her son and he lived with Beth Ann. Kathleen and Marshall did not get along and when there were arguments, Kathleen always got the "brunt of it." That day, Marshall and Beth Ann were quarrelling because Beth Ann asked him to move out of her home. Marshall was irate and was outside of the home using scissors to destroy loose gutters that were to be installed on the house.

{¶ 13} Kathleen, Beth Ann, and Beth Ann's child went into a bedroom in the home and locked the door. Kathleen explained that she wanted to separate herself from Marshall, even though the argument did not involve her. Marshall came back inside. He then threatened that he would commit suicide and that Beth Ann would come home to blood everywhere. Kathleen responded by yelling that Marshall would never babysit Beth Ann's son alone again.

{¶ 14} Marshall managed to unlock the bedroom door, possibly with the scissors he had been using to destroy the gutters. He entered the room and approached Kathleen in "attack mode." Kathleen, who had been sitting on the bed, stood up as he approached. Marshall then put his forehead against Kathleen's forehead and forced her back on to the bed. He was on top of her "on all fours." Kathleen testified that she was afraid because she was not sure if Marshall would hit her.[1] Kathleen pulled her knees up as a barrier between she and her son, "[t]o keep him from crushing me, to keep him from whatever he was going to do." Kathleen eventually pushed Marshall away using her feet, then she kicked him. Beth Ann corroborated that Marshall was on top of Kathleen and that he "got into my mother's

---

1. Kathleen also testified that she was afraid that Marshall would use the scissors on her. The testimony at trial was inconsistent as to whether Marshall was holding scissors during the physical altercation. Beth Ann recalled seeing them sitting on a box. The court found that Marshall did not have scissors in his hands during the altercation.

space."

{¶ 15} After thoroughly reviewing the record, this court concludes that the trial court did not lose its way in finding Marshall guilty of domestic violence in violation of R.C. 2919.25(C). The evidence, if believed, would allow a rational factfinder to conclude, beyond a reasonable doubt, that the circumstances supported a finding that Marshall would know that aggressively approaching his mother and forcing her onto the bed using his forehead would cause Kathleen to believe that Marshall would cause her imminent physical harm.

{¶ 16} We reject Marshall's argument that the evidence did not support the conclusion that he committed a threatening act. Marshall's physical behavior was obviously intended to intimidate his mother.

{¶ 17} We also reject the contention that the state failed to prove that Kathleen believed that Marshall would cause her physical harm because she was not afraid. R.C. 2919.25(C) has no element that the victim fear physical harm. Rather, the statute requires only that the defendant's actions cause the victim to believe imminent physical harm will occur. In this regard, Kathleen testified that she was not sure what her son would do to her but she anticipated being physically struck. Kathleen's action of bringing her knees up and creating a defensive barrier between her and Marshall bolsters the conclusion that she anticipated a physical attack. Accordingly, neither argument has any merit. Our decision with respect to the manifest weight of the evidence is also dispositive of the issue of the sufficiency of the evidence. This court overrules Marshall's third and fourth assignments of error.

{¶ 18} Assignment of Error No. 1:

{¶ 19} OHIO LAW DOES NOT RECOGNIZE NONVERBAL THREATS OF FORCE BY DEFINITION.

{¶ 20} In his first assignment of error, Marshall argues that his act of entering the

locked room and then pushing Kathleen onto the bed with his forehead was insufficient to establish a threat of force. Marshall argues, without citation to authority, that a threat of force must be verbal and a nonverbal threat of force cannot sustain a conviction under R.C. 2919.25(C). The state argues that nonverbal conduct can constitute a threat of force and cites a case from this district where nonverbal conduct constituted a threat of force. *State v. Rhoads*, 12th Dist. Clermont No. CA2012-05-040, 2013-Ohio-152. *Rhoads* involved a conviction under R.C. 2919.25(C) where the estranged boyfriend of the victim drove his truck toward the victim at a high rate of speed before braking at the last second. *Id.* at ¶ 1 ,6, 12. The victim and her companion saw the defendant grinning and glaring at them immediately after the incident. *Id.* at ¶ 13, 15. The victim testified that she believed that the defendant was threatening harm. *Id.* at ¶ 14.

{¶ 21} The Revised Code does not define "threat" or "threat of force" as used in R.C. 2919.25(C). Any word left undefined by statute is to be accorded its common, everyday meaning. *State v. Dorso*, 4 Ohio St.3d 60, 62 (1983). Webster's Dictionary's defines threat as:

> *an indication* of something impending and [usually] undesirable or unpleasant * * * *an expression* of an intention to inflict evil, injury, or damage on another [usually] as retribution or punishment for something done or left undone * * * *something* that by its very nature or relation to another threatens the welfare of the latter.

*Webster's Third New International Dictionary* 2382 (1993). (Emphasis added.) Accordingly, the common meaning of a threat is not limited to verbal communications to harm another.

{¶ 22} As implied in *Rhoads*, this court agrees that nonverbal conduct can establish a threat of force if the defendant acted knowingly and the conduct caused the victim to anticipate imminent physical harm. There is no logical support for Marshall's claim that a threat of force must be accompanied by a verbal statement. This court overrules Marshall's

first assignment of error.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE DEFENDANT DOES NOT QUALIFY AS A "FAMILY OR HOUSEHOLD MEMBER" AS THE RECEIPENT OF THE "THREAT."

{¶ 25} In his second assignment of error, Marshall presents an extension of his first assignment of error, i.e., that Ohio does not recognize nonverbal conduct for purposes of establishing a threat of force. Marshall argues that because the only verbal threat of force in evidence was from Marshall himself (his threat to commit suicide), he cannot be a victim because he cannot be related to himself. This argument has no merit. As discussed, the underlying premise of Marshall's first assignment of error, that a threat of force must be verbal, is erroneous. Furthermore, as detailed above, the threat of force involved in the offense was directed at Kathleen. It was undisputed that Kathleen is Marshall's mother. Therefore, Kathleen is a family member pursuant to the definition of "family or household member" as set forth in R.C. 2919.25(F). This court overrules Marshall's second assignment of error.

{¶ 26} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.